**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Adame, et al., | No. CV-17-03200-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Surprise, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motions to Dismiss. (Docs. 10, 31). The Court denies the first motion to dismiss (Doc. 10) as moot. The Court grants the second motion to dismiss (Doc. 31) in part and denies it in part.

## BACKGROUND

Plaintiff's decedent Derek Adame was sleeping in his vehicle at about 1:00 a.m. on November 26, 2016 when Defendant Joseph Gruver, a police officer for Defendant City of Surprise, drove past him in response to a report of a suspicious vehicle. Defendant Gruver parked his vehicle behind Mr. Adame's. He processed the vehicle's license plate number and found that it had been reported as stolen. Defendant Gruver then turned on his police vehicle's extremely bright "takedown" lights. He exited his vehicle and called in the license plate number over the radio to confirm that it was stolen. Dispatch confirmed that the car was stolen, and Defendant Gruver drew his firearm and slowly approached Mr. Adame's vehicle. Another City of Surprise police officer, Shaun McGonigle, started traveling to the location of Mr. Adame's vehicle. Seemingly,

Defendant Gruver did not know that Officer McGonigle was coming to the scene. Officer McGonigle later stated that he did not answer Defendant Gruver's question about whether the vehicle was stolen because he did not want to "freak him out" and he "had a weird feeling that something might go down." (Doc. 26 ¶ 29).

After approaching Mr. Adame's vehicle, Defendant Gruver knocked on the passenger window, and when there was no response, he opened the passenger door and pointed his firearm at Adame. Defendant Gruver identified himself as a police officer and instructed Mr. Adame to raise his hands, place them on the steering wheel, and not move. Mr. Adame complied with Officer Gruver's instructions. Defendant Gruver kept his firearm pointed at Mr. Adame and continued to yell at him to keep his hands up. Although Defendant Gruver was apparently unaware that Officer McGonigle was approaching, Officer McGonigle came within sight of the vehicle moments before the shooting, and he confirmed that Mr. Adame's hands were on the steering wheel prior to the shooting. Eventually, Defendant Gruver quickly entered the vehicle, kneeled on the passenger seat, and shot Mr. Adame twice. Defendant Gruver claimed that he shot Mr. Adame because there were a lot of unknowns; he thought he was by himself; and Mr. Adame's hands were moving. Mr. Adame's upper body fell on the center console as the vehicle sped away, and Defendant Gruver fell out of the vehicle. Mr. Adame's vehicle crashed into a truck parked in a neighboring driveway.

In compliance with policy, Defendant City of Surprise placed Defendant Gruver on administrative leave while it investigated his use of deadly force. Eventually, the City of Surprise reinstated Defendant Gruver without discipline. The Plaintiffs allege that in its investigation the City of Surprise determined that Defendant Gruver's actions were consistent with departmental policies and procedures

Plaintiffs' First Amended Complaint ("FAC") (doc. 26) alleges the above facts and includes five claims for relief. Count I claims that Defendant Gruver and Defendant City of Surprise are liable under 42 U.S.C. § 1983 for unconstitutional use of excessive force. Count II claims that Defendant City of Surprise is liable under § 1983 for failing

to train and supervise its employees. Count III claims that Defendant City of Surprise is liable under a theory of § 1983 municipal liability. Count IV claims that Defendant Gruver and Defendant City of Surprise are liable under Arizona state law for the wrongful death of Mr. Adame. Count V claims that Defendant Gruver and Defendant City of Surprise are liable under 42 U.S.C. § 1981 for discrimination. The FAC requests both compensatory and punitive damages.[1]

**DISCUSSION**

**I.  Legal Standard**

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

---

[1] In the original Complaint, the Plaintiffs named the Surprise Police Department as a Defendant, but after the City and the Plaintiffs agreed that the Police Department is a non-jural entity, *see* F.R. Civ. P. 17(b); Ariz. R. Civ. P. 17(d), the Plaintiffs did not name the Police Department as a party in the FAC.

plausibility of entitlement to relief." *Id.* (citation and internal quotation marks omitted). "In evaluating whether a complaint states a plausible claim for relief, we rely on 'judicial experience and common sense' to determine whether the factual allegations, which are assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).

**II. Analysis**

**A. 42 U.S.C. § 1983 Municipality Liability**

Counts I, II, and III of the FAC state that Defendant City of Surprise is liable for Derek Adame's death pursuant to 42 U.S.C. § 1983. (Doc. 26). Under § 1983, "local governments are responsible only for 'their own illegal acts' . . . and are not vicariously liable under § 1983 for their employee's actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)) (emphasis omitted). A plaintiff can sue a local government under § 1983 for relief when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality is liable only when its policies are the "moving force of the constitutional violation." *Id.* at 694.

The pleading standard for a *Monell* claim in the Ninth Circuit has two elements.

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subject to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); see also *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (confirming *Starr* pleading standard

for *Monell* claims).

### 1. Municipal Liability Based on Ratification

The FAC alleges that the City of Surprise is liable under § 1983 for ratifying Defendant Gruver's use of excessive force. While merely failing to discipline a subordinate does not amount to ratification of unconstitutional action, *see Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253–54 (9th Cir. 2010), if authorized policymakers approve a subordinate's decision to violate constitutional rights, "their ratification would be chargeable to the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The Ninth Circuit has "found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

In this action the Amended Complaint alleges that the City investigated Officer Gruver and that "the investigation subsequently ratified Defendant Gruver's [unconstitutional] actions, finding that his actions were consistent with departmental policies and procedures placing Defendant Gruver back to full duty." (Doc. 26 ¶ 35). It further alleges that "[i]n ratifying Defendant Gruver's actions and placing him back to work, Defendant City has demonstrated by act or omission that the unconstitutional, excessive and unreasonable force used by Defendant Gruver against the unarmed Adame is an accepted practice within Defendant City's operations." (Doc. 26 ¶ 36). This is a sufficiently plausible allegation of ratification to withstand a motion to dismiss.

### 2. Municipal Liability Based on Inadequate Training

The FAC also alleges that the City of Surprise is liable under § 1983 for failing to adequately train its officers. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a

city be liable for such a failure under § 1983." *Id.* at 389 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483–484 (1986)). That is, "the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. The deficiency in the municipality's training program "must be closely related to the ultimate injury" as to not result in "*de facto respondeat superior* liability on municipalities." *Id.* at 391–92. Additionally, "[e]vidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy," *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007), "nor can liability be predicated on . . . isolated sporadic events . . . ." *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 932 (9th Cir. 2001).

The facts do not give rise to the plausible conclusion that the Defendant City was "deliberately indifferent" to Mr. Adame's lack of proper training. Although the FAC alleges that Defendant Gruver's actions indicate that he was not properly trained to handle the encounter, it does not otherwise allege anything about the deficiency of the City's training. Accepting the allegation that Defendant Gruver was not properly trained as true, it is not enough to impose liability on the City, because municipal liability cannot be based on such an isolated, sporadic event, and it does not sufficiently suggest that the City of Surprise deliberately chose not to train its officers in the face of evidence that its officer training was inadequate. Considering the heightened standard of deliberate indifference for municipal liability, the FAC does not allege a sufficient factual basis to suggest that the Defendant City's "need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

### 3. **Municipal Liability Based on Inadequate Supervision**

In addition to a claim of inadequate training, the FAC includes a claim that the City of Surprise inadequately supervised its employees. The "deliberate indifference"

standard of a section 1983 failure to train claim also applies to a failure to supervise claim. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) ("*Canton* dealt specifically with inadequate training. We see no principled reason to apply a different standard to inadequate supervision.").

The Adame's FAC includes sufficient factual information to plausibly conclude that Defendant City of Surprise's deliberate indifference in the supervision of Defendant Gruver resulted in Mr. Adame's death. Officer McGonigle stated that he did not verbally respond to Defendant Gruver's question about the stolen vehicle because he did not want to "freak him out" and he "had a weird feeling that something might go down." (Doc. 26 ¶ 29). The FAC alleges that "Defendant Gruver was known by his co-workers . . . to 'freak out'" and his "supervisors allowed him to patrol individually and to contact citizen's despite knowing he was capable of 'freaking out' and handling situations inappropriately." (Doc. 26 ¶¶ 51–52). These allegations, based on Officer McGonigle's statements, sufficiently suggest that the City of Surprise was aware that Defendant Gruver was incapable of appropriately handling relatively routine responsibilities. Despite knowing about Defendant Gruver's inabilities, the Amended Complaint alleges that the City still assigned him to the night patrol where Defendant Gruver would be alone without other immediate assistance or close supervision. It is plausible that Defendant Gruver's reputation for "freaking out" was an obvious problem such that the City was deliberately indifferent to what might result from Defendant Gruver "freaking out" while on patrol. The FAC's allegations of failure to supervise are sufficiently plausible to survive a motion to dismiss.

In summary, the FAC presents sufficient allegations to reasonably infer that Defendant City of Surprise may be liable for the constitutional violations on the bases of ratification and failure to adequately supervise, and the Defendant City should be subject to the expense of discovery and continued litigation. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). Further, the allegations give fair notice to enable the City of Surprise to defend

itself effectively. *Id.* The Court denies Defendants' motion concerning dismissal of the § 1983 claims (Counts I, II, and III) against Defendant City of Surprise on the theories of ratification and failure to adequately supervise.

### B. Notice of Claim to Officer Gruver

Arizona courts have held that the notice of claim statute is to be interpreted strictly. Further, in cases where both the public entity and public employees are sued, plaintiffs must "give notice of the claim to *both* the employee individually and to his employer." *Crum v. Superior Court in & for County of Maricopa*, 922 P.2d 316, 317 (Ariz. Ct. App. 1996) (citing *Johnson v. Superior Court*, 158 Ariz. 507, 509 (App. 1988) (emphasis in original).

Plaintiffs failed to properly notify Defendant Gruver. The process server delivered a notice of claim to the City of Surprise on May 22, 2017 and addressed it to the Office of the City Clerk and the Surprise City Prosecutor. (Doc. 31, Exh. A). Although the Notice of Claim includes a recitation of Officer Gruver's alleged misconduct in the background section, the Notice of Claim is neither addressed to or served upon Officer Gruver, nor does it identify him as a party to the claim. (Doc. 31, Exh. A). Because the Plaintiffs filed a notice of claim with only the City of Surprise, the Court grants Defendants' motion in part and dismisses the state law wrongful death claim against Officer Gruver.

### C. 42 U.S.C. § 1981 Liability

In Count V, Plaintiffs claim that the City of Surprise and Officer Gruver discriminated against Mr. Adame on account of his ethnicity in violation of 42 U.S.C. § 1981(a). (Doc. 26). 42 U.S.C. § 1981(a) confers upon all persons the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings[.]" Section 1981(a) further provides that all persons "shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." Section 1981 "can be violated only by purposeful discrimination," *General Bldg. Contractors Ass'n. Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982), and a plaintiff must plausibly allege "intentional discrimination on account of race." *Evans v.*

*McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989). The complaint must set forth "overt acts" of discrimination and contain facts to establish that the defendant's conduct was motivated by racial animus. *See id.* at 1345.

Plaintiffs' FAC states that the decedent, Derek Adame, "is a person of Mexican-American ethnicity." (Doc. 26 ¶ 69). It further alleges that "Defendants discriminated against Adame on account of his ethnic identity" and killed him "in part or in whole because of his ethnic heritage" and that "[w]hite persons contacted by members of the Surprise Police Department [are] not treated in a similar fashion." (Doc. 26 ¶ 70). The FAC alleges sufficient facts at this stage to survive a motion to dismiss. The FAC also alleges that Defendant City of Surprise violated § 1981. Congress has imported the *Monell* requirements for municipal liability to § 1981 violations. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215–16 (9th Cir. 1996). Therefore, like § 1983, under § 1981, a municipality is liable for policies and customs which cause injuries, not for the actions of its employees. *Id.* As already described above, the FAC sufficiently claims under a theory of ratification and a failure to supervise that the Defendant City may be liable for a policy or custom of unconstitutional use of excessive force. *Supra* at 4–8. The same analysis, coupled with the FAC's allegations of differential treatment as between Hispanics and Caucasians, is also sufficient at this stage to prevent dismissal of the § 1981 claim.

### D. Punitive Damages

The FAC includes a request for an award of punitive damages. (Doc. 26 ¶ 77). Both parties agree that municipalities are immune from punitive damages for claims arising from § 1983 and Arizona state law. *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cit. 1996); A.R.S. § 12-820.04. Plaintiffs' argument that Defendant Gruver is liable for punitive damages under the state law wrongful death claim is moot because the Court dismisses the state law claims against Defendant Gruver. *See supra* at 8. The Court holds that punitive damages are available for Counts I and V of the FAC against Defendant Gruver in his individual capacity, and for no other claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc). 10, is denied as moot.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Doc. 31) is granted in part and denied in part as follows:

1. Count One of the FAC **REMAINS** as to Defendant Gruver and Defendant City of Surprise.

2. Count Two of the FAC **REMAINS** as to Defendant City of Surprise.

3. Count Three of the FAC **REMAINS** as to Defendant City of Surprise.

4. Count Four of the FAC is **DISMISSED** as to Defendant Gruver and **REMAINS** as to Defendant City of Surprise.

5. Count Five of the FAC **REMAINS** as to Defendant Gruver and Defendant City of Surprise.

6. Defendant Surprise Police Department is dismissed as a party.

7. Punitive damages are available for Count One and Count Five of the FAC against Defendant Gruver and are not available for any other claim against any other party.

Dated this 29th day of June, 2018.

_____
Honorable G. Murray Snow
United States District Judge