WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Adame, et al., | No. CV-17-03200-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Surprise, et al., | |
| Defendants. | |

Pending before the Court is the Defendants' Motion for Summary Judgment (Doc. 87) and Plaintiffs' Motion for Leave to Amend the Complaint (Doc. 97).

## BACKGROUND

The record, viewed in the light most favorable to the Plaintiffs, shows the following: Plaintiffs' relative, decedent Derek Adame, was sleeping in a Nissan Sentra around 1:00 A.M. on November 26, 2016, when Defendant Joseph Gruver, a police officer for the City of Surprise, drove past the vehicle. Officer Gruver was responding to a suspicious vehicle call. He parked his patrol car nearby and ran the license plate of the vehicle and the plates came back as stolen. (Doc. 88-2 at 5). At this time, Officer Gruver did not know any other additional information about the vehicle. Before exiting his vehicle, Officer Gruver turned on the police vehicle's bright "takedown" lights.

Officer Gruver approached Adame's vehicle from the passenger side. (Doc. 91 Ex. E at 0:30–0:50) As he came around the back of the vehicle, Officer Gruver noticed that there was an individual in the driver's seat, who was "leaning over to the side." (Doc. 88-

2 at 6). Officer Gruver opened the passenger side door, drew his weapon and immediately stated, "Surprise Police. Let me see your hands." (Doc. 91, Ex. E at 1:15–1:17). He instructed Adame to keep his hands on the steering wheel and said, "until I figure out what's going on, you're going to stay right there." (*Id*. at 1:39–1:48, 2:07–2:13). At the same time, another Surprise Police Officer, Shaun McGonigle was approaching. (*Id*., Ex. C At 0:00–0:35). Officer Gruver again told Adame to keep his hands up and visible. (*Id*. at 3:10–3:15).

Adame initially complied. He then started the car while maintaining his left hand on the steering wheel. (Doc. 91 Ex. C at 0:37). After Adame started the car, Officer Gruver entered the vehicle. (*Id*. Ex. E at 3:26–3:28; *id*., Ex. C. at 0:37–0:41). Officer McGonigle arrived by the car as it began to pull away. (*Id*. Ex. C at 0:25–0:39). As the car began to accelerate, Officer Gruver yelled "Keep them up! Keep them up right now! Don't move!" and then immediately fired two shots. (*Id*. Ex. E at 3:21–3:31). The passenger side door remained open as the shots were fired. (Doc. Ex. C at 0:35–0:43). When he was shot, Adame's left hand was on the steering wheel and his right hand was in the area by the gearshift. (*Id*., Ex. E. 3:28–3:30). Adame's upper body fell on the center console as the vehicle sped away, and Officer Gruver fell out of the vehicle. (*Id.* at 3:31–3:38). Adame's vehicle ultimately crashed into a truck parked in a neighboring driveway. (*Id*. Ex. C at 1:31). After the vehicle crashed, but before the police were able to inspect the vehicle, Officer Gruver was asked if Adame had a gun. Officer Gruver responded, "No. He took off with me in the car." (*Id*. at 7:35–7:43). At no time during this encounter did either officer see a weapon in the vehicle.

Maria Adame and Clarisa Abarca ("Plaintiffs") then filed this action for relief. Defendants now move for summary judgment on Plaintiffs' remaining claims.

**DISCUSSION**

**I. Fourth Amendment Standing**

Fourth Amendment rights are personal and may not be asserted vicariously. *Alderman v. U.S.*, 394 U.S. 165, 174 (1969). Fourth Amendment standing law applies to

claims made against public officials and entities. *See Longoria v. Pinal City*, 2015 WL 13654010 at *2 (D. Ariz. 2015). For Plaintiffs who bring 1983 actions, "the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). Arizona's state law authorizes a survival action by a personal representative of the decedent's estate. *See* Ariz. Rev. Stat. § 14-3110. If a representative of the decedent's estate does not bring the claim under the Fourth Amendment, that claim cannot proceed. *See Smith v. City of Fontana,* 818 F.2d 1411, 1417 (9th Cir. 1987) ("The children were not directly subjected to the excessive use of state force and therefore cannot maintain personal causes of action under section 1983 in reliance on this Fourth Amendment theory."), *overruled on other grounds*, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999) (en banc). Plaintiffs, recognizing this error in their complaint, now move to amend to add Maria Adame as personal representative of Derek Adame's estate under Federal Rule of Civil Procedure 17.

Plaintiffs in this case purportedly agreed to dismiss all claims on behalf of the estate with prejudice in a prior order. (*See* Doc. 52). After briefing was completed on these two pending motions, the Court requested the parties to submit supplemental briefing on whether the Plaintiffs had authority or standing to agree to the dismissal of the estate's claims with prejudice. (Doc. 105). Nothing provided by either party in that briefing suggested there was a personal representative appointed at the time of the stipulation, or that there was otherwise a basis on which the estate's claims could be dismissed with prejudice. Therefore, in this order, the Court is both reconsidering the dismissal of the estate's claims with prejudice as well Plaintiffs' motion to amend the complaint.

At the time the Court entered its order in granting the parties' stipulation, the estate did not have an authorized personal representative in the negotiations, and therefore, Plaintiffs in this action did not have standing to bring or agree to dismiss the claims of the estate. *See* Ariz. Rev. Stat. § 14-3703(c) (explaining that the personal representative of the

estate has standing to sue and be sued). Accordingly, the stipulation to dismiss the claims of the estate with prejudice is void, because the estate itself did not agree to dismiss its claims through an authorized representative.

Relief under Federal Rule of Civil Procedure 17 is available where "counsel makes understandable error in naming the real party in interest." *Jones v. Las Vegas Metropolitan Police Department*, 873 F.3d 1123, 1128 (9th Cir. 2017). Under Rule 17, "[t]he Court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to . . . .join." Fed.R.Civ. P. 17(a)(3). "This [rule] is consistent with [the] longstanding policy in favor of deciding cases on the merits." *Jones*, 873 F.3d at 1128. Like the plaintiffs in *Jones*, Plaintiffs here mistakenly named Ms. Adame and Ms. Abarca in their personal capacity as the party for their excessive force claim against the Defendants. "Rather than enter judgment immediately after noting the deficiency, the district court should . . . give[] plaintiffs a reasonable opportunity to substitute the right party." Maria Adame is now the appointed personal representative of the estate of the decedent and is therefore the real party in interest for the Fourth Amendment claim. (Doc. 97, Ex. C). Contrary to Defendant's suggestion, Plaintiffs are not seeking to add an entirely new claim. Since the beginning of this case, Plaintiffs maintained an excessive force claim against the Defendants. (*See* Doc. 26 at 10) (asserting that "[t]he actions of Defendant Gruver . . . violated and deprived Adame of his clearly established and well-settled civil rights to be free from the use of excessive and deadly force. . . ."). It is on this claim that Plaintiffs now seek to substitute the personal representative of decedent's estate. Because the prior agreement of the parties did not extinguish the estate's excessive force claim, and because the estate is the only party who could properly bring this claim, Plaintiffs will be allowed to amend their complaint to substitute the personal representative of the estate for the named plaintiffs on the excessive force claim. *Id*. at 1129 (permitting plaintiffs to substitute the personal representative decedent's estate in an excessive force action for a different plaintiff under Federal Rule of Civil Procedure 17).

If Defendants wish to conduct additional discovery relating to the decedent's estate, they may file a motion with the Court to reopen discovery for a period of time.

## II. Qualified Immunity

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotation marks and citation omitted).

"In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). To determine whether a right is clearly established, courts must examine "whether the state of the law at the time of the incident provided a fair warning to the defendant that his or her conduct was unconstitutional." *Jessop v. City of Fresno*, 918 F.3d 1031, 1035 (9th Cir. 2019) (internal citations and quotation marks omitted). When determining whether a right is clearly established, courts in this Circuit "may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." *Prison Legal News v. Lehman*, 397 F.3d 692, 702 (9th Cir. 2005).

### 1. Whether Officer Gruver Violated Adame's Constitutional Right

When determining whether a use of force was excessive in violation of the Fourth Amendment, the question is whether the force was "objectively reasonable in light of the facts and circumstances confronting the . . . officers." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (internal quotation marks and citation omitted). This reasonableness analysis is "always a very fact-specific inquiry." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011). Courts weigh several factors when determining reasonableness, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396

(1989). "Ultimately, [the Court] must balance the force that was used by the officers against the need for such force to determine whether the force used was greater than is reasonable under the circumstances." *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). The most important *Graham* factor is whether the suspect poses an immediate threat to the safety of the officer or others. *See Mattos*, 661 F.3d at 441.

It is undisputed here that the decedent was attempting flight. But the Supreme Court has cautioned that "where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). At the time of the incident, Officer Gruver only knew that Mr. Adame was in possession of a vehicle with stolen plates. He did not have additional information that would indicate that Mr. Adame had previously committed or was in the process of committing a violent crime.

The key factor, then, is whether Adame posed an immediate threat to the safety of Officer Gruver or others at the time of the shooting. In *Gonzales v. City of Anaheim*, the Ninth Circuit confronted a similar situation and explained that whether the police officer violated the decedent's Fourth Amendment right turned largely on whether "whether the [vehicle] had violently accelerated and was moving at a high rate of speed." 747 F.3d 789, 794 n.1 (9th Cir. 2014) (en banc). So too here. If a jury concludes that the vehicle was not violently accelerating at the time of the shooting and accordingly did not pose an immediate danger to Officer Gruver's safety, they could find that Officer Gruver's use of force here was unreasonable.

### 2. Whether the Right Was Clearly Established

The Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (internal citation and quotation marks omitted). In the context of excessive force cases, "police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1153. So the key question then,

is whether a police officer violates clearly established law when he shoots the driver of a moving vehicle from the passenger seat while the vehicle is just beginning to accelerate without warning the driver that he is planning to resort to deadly force.

This case is on all fours with the Ninth Circuit's decision in *Gonzales.* 747 F.3d 789 (9th Cir. 2014) (en banc). There, as here, a police officer approached the passenger side of a vehicle during an investigation, drew his gun and entered the vehicle in an effort to subdue the driver. *Id*. at 792. There, as here, the decedent started the car, and began to accelerate slowly in an attempt to flee while the officer was still inside the vehicle. *Id*. There, as here, the officer failed to give a warning before using deadly force. *Id*. at 797. There, as here, the police officer was "[u]nable to stop or gain control of the car" and so "drew his weapon and shot [the decedent] . . . killing him." *Id*. at 793. There, the Ninth Circuit held that the officer's conduct violated the Fourth Amendment's prohibition on the use of excessive force—so long as the jury determined that car was moving at a slow rate of speed at the time of the shooting. Based on that decision, a reasonable officer should have been on notice that this specific conduct violates clearly established law.

Officer Gruver also deviated from several aspects of his training, by failing to give a warning before using deadly force, failing to give commands before opening any of the vehicle doors, failing to ask the driver to exit the vehicle and sit on the curb, failing to ask the driver to remove the keys from the vehicle, failing to using other means to subdue the suspect, and entering a vehicle when the suspect posed a flight risk. (*See* Doc. 90-2 at 7, 19, 25, 36, Doc. 90-3 at 19, Doc. 90-10 at ¶¶ 5–17). These failures also point in favor of denying qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) (explaining that "training materials are relevant . . . to whether reasonable officers would have been on notice that the force employed was objectively unreasonable.").

Viewing the facts in the light most favorable to Plaintiffs, a jury could find that Officer Gruver violated Adame's clearly established Fourth Amendment rights by unreasonably resorting to lethal force under these circumstances. Accordingly, the Motion

for Summary Judgment as to qualified immunity is denied.

## II. Fourteenth Amendment

On their own behalf, Plaintiffs also assert that, as Adame's relatives, that they have been deprived of a familial relationship in violation of their Fourteenth Amendment right to substantive due process. This claim requires Plaintiffs to demonstrate that Officer Gruver's behavior "shocks the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Further, to establish this claim, in situations in which it is not practical for the defendant to deliberate before acting, Plaintiffs must establish that Officer Gruver acted with a "purpose to harm unrelated to legitimate law enforcement objectives." *Hayes v. City of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013). In their opposition to the motion Plaintiffs fail to point to any evidence from which a jury could conclude that Officer Gruver had any ulterior motives for using force against Adame. *See Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) (explaining that "speculation . . . as to . . . improper motive does not rise to the level of evidence sufficient to survive summary judgment."). Accordingly, the Motion for Summary Judgment on this claim is granted.

## III. Plaintiffs' State Law Claims

In their complaint, Plaintiffs allege that Officer Gruver intentionally, recklessly, and negligently caused Adame's death. (Doc. 1 Ex. 1 at 16). Negligent use of excessive force is no longer a viable claim under Arizona law under these circumstances. *See Ryan v. Napier*, 254 Ariz. 54, 62 425 P.3d 230, 238 (2018). However, a jury could still conclude that the use of force here was intentional and not justified under Ariz. Rev. Stat. § 13-410(c), which provides that the use of deadly force is justified only when the officer believes it is necessary:

> 1. To defend himself or a third person from what the peace officer reasonably believes to be the use or imminent use of deadly physical force.
>
> 2. To effect an arrest or prevent the escape from custody of a person whom the peace officer reasonably believes:
>
>> (a) Has committed, attempted to commit, is committing or is attempting to commit a felony involving the use or a threatened use of a deadly weapon.

(b) Is attempting to escape by use of a deadly weapon.

(c) Through past or present conduct of the person which is known by the peace officer that the person is likely to endanger human life or inflict serious bodily injury to another unless apprehended without delay.

(d) Is necessary to lawfully suppress a riot if the person or another person participating in the riot is armed with a deadly weapon.

Because a jury could reasonably conclude—based on the contemporaneous statements of Officer Gruver from the body cam footage—that he knew Adame was unarmed at the time of the shooting and the vehicle was moving at a slow speed, a jury could find that the use of deadly force was not justified under Ariz. Rev. Stat. § 13-410. Thus, the Motion for Summary Judgment as to the wrongful death claim is granted in part and denied in part.

## CONCLUSION

Plaintiffs will be permitted to amend their complaint to substitute decedent's estate as a party. Plaintiffs fail to point to evidence from which a jury could conclude that Officer Gruver had ulterior motives, so Defendant's Motion for Summary Judgment as to Plaintiffs' Fourteenth Amendment claim will be granted. Negligent use of excessive force is no longer a viable claim in Arizona, but a jury could conclude that Officer Gruver's intentional use of force was unjustified. Plaintiffs point to facts from which a jury could find in their favor on all other claims.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Amend the Complaint (Doc. 97) is **GRANTED**. Plaintiffs shall file their amended complaint **forthwith**.

**IT IS FURTHER ORDERED** that should Defendants wish to conduct additional discovery as to the decedent's estate, they may file a motion with the Court and request additional discovery **within fourteen days** of the date the amended complaint is filed.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 87) is **GRANTED IN PART AND DENIED IN PART** as follows: Summary Judgment is granted as to Plaintiffs' Fourteenth Amendment and negligent use of excessive

force claims.   Summary Judgment is denied as to all other claims.

**Dated this 24th day of May, 2019.**

_____
G. Murray Snow
Chief United States District Judge